IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IRENE JONES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv538-WHA |
| | ) | |
| LMR INTERNATIONAL, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| LORETTA PERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv668-WHA |
| | ) | |
| GREAT WEST LIFE & ANNUITY INS. CO., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| FAYE TEW, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv494-WHA |
| | ) | |
| LMR INTERNATIONAL, INC., et al., | ) | |
| | ) | (WO) |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  PROCEDURAL HISTORY**

This cause is before the court on a Motion for Summary Judgment filed by Defendants

Great-West Health Care, Inc. and Great-West Life & Annuity Insurance Company ("Great-

West")[1] (Doc. #100), and a Motion for Partial Summary Judgment filed by the Plaintiffs (Doc. #101).

The Plaintiffs originally filed complaints in three cases in the Circuit Court of Barbour County, Alabama, Eufaula Division, bringing solely state law claims, including claims for fraud and breach of contract, against their employer and Great-West.  The Plaintiffs sought damages for their employer's failure to fund its benefits account, and for the Defendants' failure to notify the Plaintiffs that their benefits plan had terminated.

The cases were removed on the basis of federal question subject matter jurisdiction.  This court denied motions to remand which were filed by the Plaintiffs, finding that there was subject matter jurisdiction because the state law claims were completely preempted by the Employee Retirement Income Security Act ("ERISA") in the three companion cases.  *Jones v. LMR Int'l. Inc.*, 351 F. Supp. 2d (M.D. Ala. 2005).   The court then allowed the Plaintiffs to amend their complaints to assert ERISA claims and whatever state law claims the Plaintiffs felt could be appropriately raised.  The court then granted subsequent motions to dismiss the state law claims and to strike the jury demands. *Jones v. LMR Int'l, Inc.*, 367 F. Supp. 2d 1346 (M.D. Ala. 2005). The court certified the cases for interlocutory appeal, and the Eleventh Circuit affirmed this court's decisions. *Jones v. LMR Int'l, Inc.,* 457 F.3d 1174, 1176 (11th Cir. 2006).  The Plaintiffs subsequently filed new amended complaints.

Great-West moved to dismiss the ERISA claims against it, arguing that it is not a fiduciary under the relevant ERISA plan.  The Plaintiffs were given a final opportunity to file

---

[1] Great-West Health Care, Inc. states that it has been improperly named as Great-West Healthcare and Great-West Life & Annuity Insurance Company.   The parties have referred to the Defendants as Great-West, so the court will also refer to both Defendants as Great-West.

amended complaints in the consolidated cases that identifies which section or sections of ERISA they claim have been violated in this case, which Defendant or Defendants violated each section so identified, and how each separate Defendant violated the section.  The Plaintiffs filed a Fourth Amended Complaint in the consolidated cases bringing ERISA claims, and Great-West has again raised the issue of its status as a fiduciary in its Motion for Summary Judgment.

## II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In resolving cross-motions for summary judgment the court construes the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987).

## III. FACTS

The Plaintiffs are individuals who were employees of LMR International, Inc. ("LMR") and were participants in LMR's employee benefit plan ("the Plan").  There are references to several different benefits in the Plan document provided to the court, but the benefits at issue in this case are for medical, prescription drug, and dental benefits, which are defined as "self-funded benefits."  Exhibit B to Doc. #102 at page 4.  Under the Plan document, the employer, LMR, was "fully responsible for the self-funded benefits."  *Id.*

Great-West and LMR entered into an Administrative Services Contract ("ASC") whereby Great-West agreed to perform some services for the self-funded benefits payable under the Plan.  Great-West's role with regard to self-funded benefits is described in the Plan document as being that "Great-West processes claims and provides other services to the Employer related to the self-funded benefits.  Great-West does not insure or guarantee the self-funded benefits."  *Id.*

The ASC between Great-West and LMR states that the services to be provided by Great-West are "non-discretionary and ministerial and shall be performed in accordance with the terms of the . . . Plan and (DOL claims regulations)."  Exhibit A to Doc. #102, page 2.

Great-West was not designated as the Plan Administrator or a Plan fiduciary in the ASC. To the contrary, the ASC states that Great-West "is not the Plan Administrator" and "is not the named fiduciary or a fiduciary of the Plan . . . ."  Exhibit A to Doc. #102 at page 8.  Under the ASC, LMR is designated as the fiduciary of the Plan and the Plan Administrator.[2]  The only discretion to be exercised by Great-West with regard to self-funded benefits was in the context of appeals of denials of claims for self-funded benefits.  Exhibit B to Doc. #102, page 4.

Under the ASC, LMR was to establish and maintain a bank account with sufficient funds to honor its claims obligations.  Exhibit A to Doc. #102 at page 3.  LMR was also required to pay fees to Great-West. *Id.*  Under the ASC, LMR was to pay to Great-West an amount equivalent to the claims incurred by the Plan members under the plan.  *Id.* at page 4.  The ASC states that LMR shall retain responsibility for all Plan benefit claims and all expenses incident to the Plan. *Id.* at page 5.

For a period of a year after LMR and Great-West entered into the ASC, Great-West paid claims for self-funded benefits pursuant to the plan.  Pat Fry Affidavit at ¶ 2.  LMR apparently began experiencing financial difficulties in November 2003, however, and failed to fully reimburse Great-West for payment of medical claims and to pay other expenses incurred in September and October 2003.  Exhibit F to Doc. #102.  The court has been provided e-mail

---

[2]  In previous opinions entered in this case, this court, relying on the evidence before it at that time which was introduced after jurisdictional discovery had been conducted, referred to Great-West as a plan administrator, but made no determination as to its status as a fiduciary. The parties have not argued, and the court does not find, that any previous characterization is binding for purposes of the analysis of fiduciary status in this case.  In addition, this court notes that in its previous opinion in this case, the Eleventh Circuit addressed issues of defensive preemption without deciding whether Great-West was a fiduciary, or a non-fiduciary administrator. *Jones v. LMR Int'l, Inc.,* 457 F.3d 1174, 1180 (11th Cir. 2006) (holding that the claims against Great-West "are preempted regardless of whether Great West is an ERISA entity).

correspondence between Great-West and LMR in which LMR acknowledges that it is experiencing financial problems.  *Id.*  This correspondence indicates that between November 2003 and March 2004, Great-West and LMR continued to discuss attempts by LMR to pay the amount owed Great-West and to fund the self-funded benefits portion of its benefits plan. *Id.* LMR made some payments on its obligations to Great-West during this period of time, although the payments were not for the full amount owed.  When those payments were made, Great-West continued processing claims.  Pat Fry Affidavit at ¶ 3.

On March 11, 2004,  Eileen Emrick of Great-West wrote an email to LMR and stated that the ASC would be terminated unless payment of amounts due was made within 5 days.  Exhibit H to Document #102.  On March 23, 2004, Sheila White of LMR wrote an email saying that a last effort was being made to pay amounts owed.  Great-West responded that the effective date of the termination of the ASC contract was March 1, 2004.  Exhibit I to Doc. #102.  LMR employees were given a memorandum on March 24, 2004 informing them that the contract with Great-West was terminated.  Exhibit K to Doc. #102.

The ASC states that if LMR has not made all payments due under the contract, Great-West will have the right to stop providing services, and LMR "will notify each Member covered under the Plan of such termination."  Exhibit A to Doc. #102 at page 11.

## IV.  DISCUSSION

Great-West has moved for summary judgment as to all of the claims in the Plaintiffs' Fourth Amended Complaint, arguing that it is not responsible for paying benefits due under the Plan, that it is not a fiduciary under the relevant ERISA plan, and that there has been no breach of fiduciary duty in this case.  The court turns first to the question of whether Great-West bears

liability for benefits due under the Plan, and then to whether there is sufficient evidence that

Great West is a fiduciary in this case or that there was a breach of fiduciary duty.

### A.  Claim for Benefits

The fourth count of the Plaintiffs' Fourth Amended Complaint attempts to state a claim

for payment of benefits against Great-West.  While Great-West has moved for summary

judgment as to this claim, the Plaintiffs have not, and the Plaintiffs also do not appear to have

pursued this claim in opposition to Great-West's motion.  To the extent that the Plaintiffs

intended to persist with this claim, the court agrees with Great-West that there is no evidence

before it to support such a claim.  To the contrary, the Plan documents show that LMR, not

Great-West, was fully responsible for the medical benefits.  Exhibit B to Doc. #102, page. 4.

The mere fact that Great-West paid benefits from its own account does not create a question of

fact as to LMR's ultimate liability for benefits, because under the ASC, LMR retained all

liabilities of the Plan and was to reimburse Great-West for disbursements.  Exhibit A to Doc.

#102 at page 4.  Accordingly, summary judgment is due to be GRANTED Great-West as to

Count Four of the Fourth Amended Complaint.

### B.  Fiduciary Duty Claims

The remaining claims in the Fourth Amended Complaint are for breaches of fiduciary

duty.  The claims as alleged in the Fourth Amended Complaint are based on the theory that

Great-West failed to disclose that the benefits Plan had terminated.  Fourth Amended Complaint

at ¶ 50.  Apparently in the face of evidence that there were discussions between LMR and Great-

West between November 2003 and March 2004 about the continuation of Great-West's

processing of benefits claims, however, in their briefs, the Plaintiffs also have argued that Great-

West had a duty to disclose that LMR was not funding the benefits plan, so that the Plan members would know that their benefits were in jeopardy before the ASC was terminated.  The Plaintiffs have also argued in their briefing that Great-West made misleading and false statements in notices provided to Plan members.

For Great-West to be responsible for a breach of fiduciary duty, it must be a fiduciary of the Plan.  As set out above, the ASC states that Great-West "is not the named fiduciary or a fiduciary of the Plan . . . ."  Exhibit A to Doc. #102 at page 8.   Formal titles, however, are not dispositive of the issue of fiduciary status.  *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).

Instead, courts examine whether a person or entity (I) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A). .

The Plaintiffs point to the deposition of Patricia Fry, corporate representative of Great-West, in which she stated that Great- West developed and used guidelines called "Preference," in processing benefits claims.  The Plaintiffs also state that Great-West developed, modified, and mailed notices to the Plaintiffs and their medical providers.  Other evidence to which the Plaintiffs point to support the argument that Great-West is a fiduciary includes evidence that Great-West and its subsidiary One Health established and managed the physician network for the health care plan, that Great-West processed claims after the employer checked off the options it

8

chose under the network plan, and that Great-West paid claims out of its checking account.

Therefore, the Plaintiffs argue, Great-West exercised discretionary authority or control over the

administration of the plan.[3]

    In analyzing the issue of fiduciary status, the court notes that a company which merely

processes claims is not necessarily a fiduciary of an ERISA plan.  *Baker v. Big Star Div. of the

Grand Union Co.*  893 F.2d 288, 290 (11th Cir. 1989).  Of even greater significance in this case,

however, is the idea that  "a party is a fiduciary only 'to the extent' that it performs a fiduciary

function." *Cotton*, 402 F.3d at 1277 (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54

(4th Cir. 1992)).[4]   That is, a "'person is a fiduciary with respect to a plan,' and therefore subject

---

[3] The Plaintiffs also argue that Great-West ought to be estopped from disclaiming
fiduciary status in this case because it sued as a fiduciary of a plan in *Great West Life and
Annuity Insurance Company v. Knudson*, 534 U.S. 204 (2002).  There is, however, no discussion
in that opinion of the basis for Great-West's fiduciary status, and its status was apparently not an
issue before the Supreme Court.  Therefore, given the case law which holds that an entity may be
a fiduciary for some purposes and not others, this court declines to impute fiduciary status in this
case, solely on the basis of Great-West's status in *Knudson*.  Similarly, the Plaintiffs' citation to
*Sereboff v. Mid Atlantic Medical Services, Inc.*, _ U.S. _, 126 S. Ct. 1869 (2006), as an
explanation of Great-West's fiduciary status in *Knudson* is unavailing because the Court merely
noted that Great-West paid benefits on the beneficiaries' behalf, and there was no analysis of
fiduciary status in the case.  *Id.* at __, 1873.


[4] Great-West appropriately relies on *Coleman*, which has been relied on by the Eleventh
Circuit.  The court points out, however, that Great-West also relies on a series of cases arising
from the Sixth Circuit Court of Appeals which have declined to adopt the *Coleman* approach.
While the district court decisions Great-West relies on to support its argument were affirmed on
appeal, the Sixth Circuit adopted a rationale that departs both from the district court's reasoning,
and Great-West's argument in this case.  *See Tregoning v. American Community Mutual Ins.
Co.*, 815 F. Supp. 1054, 1059 (W.D. Mich. 1992), *aff'd*, 12 F.3d 79, 83 (6th Cir. 1993).  The
Sixth Circuit declined to adopt the analysis used in *Coleman* and instead affirmed the district
court on the grounds that the plaintiffs were suing for damages which flowed directly to them,
rather than to the plan, and therefore, could not recover their losses.  *Id.*; *see also Cole v. Health
Care Service Corp.*, 33 F.3d 54 (6th Cir. 1994).  That is not the case here, so these cases do not
support Great-West's Motion for Summary Judgment.  *See* Fourth Amended Complaint at page
14.

to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe,* 516 U.S. 489, 498 (1996).

In *Coleman*, cited favorably by the Eleventh Circuit in *Cotton*, the plaintiff participated in a group health insurance plan paid for by an employer.  The employer defaulted on the payments and the insurance company informed the employer that the policy was cancelled as of its effective date because no premiums had been paid other than the initial deposit.  The plaintiff had received a letter from the insurance company which included the policy number, and had received an authorization for a two-day hospital stay for childbirth which disclosed that it did not guarantee payment.   The court reasoned that it had to determine whether the insurance company possessed discretionary authority or responsibility to notify plan beneficiaries of the employer's failure to pay plan premiums.  *Coleman,* 969 F.2d at 61.  The court found nothing in the plan documents that suggested the insurance company had such authority, and noted that it must look beyond mere formalities to see if the insurance company in fact exercised authority over notifications.  *Id.* The court concluded there was no basis in the insurance company's actions for concluding that it possessed or exercised discretionary authority or responsibility with respect to the notification issue.  *Id.*; s*ee also Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214 (8th Cir. 1993) (holding that an insurance company did not have the fiduciary duty to notify participants and beneficiaries of the offer of reinstatement, even if it was a fiduciary with respect to claims handling); *Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 856 (7th Cir. 1997) (finding that

claims processor could not be considered a fiduciary with respect to notification of plan

participants).

Under *Coleman*, and cases which have followed it, therefore, fiduciary status confers a

fiduciary duty only in the areas for which the person or entity serves as a fiduciary.  Therefore,

even if there is some evidence of discretionary authority as to aspects of administration of the

ERISA plan, that is not sufficient to establish a fiduciary duty to notify plan participants about

the status of the plan.   Accordingly, this court's inquiry is whether Great-West "possessed

discretionary authority or responsibility to notify all plan beneficiaries of circumstances, such as

the failure of the plan sponsor to pay policy premiums, that would affect the availability of

benefits to all."  *Coleman*, 969 F.2d at 61.

In conducting this analysis in the instant case, the court begins with the relevant portions

of the ASC.   As set out above, the ASC provides that Great-West will provide services which

are non-discretionary and ministerial.  There is no mention in the ASC or the Plan document of

any duty to make general disclosures to Plan members about the financial status of the Plan.

Instead, the ASC states that LMR, not Great-West, will notify each member covered under the

plan of a termination of the contract.  Exhibit A to Doc. 102 at page 8, Section 11.  Clearly, the

ASC and Plan documents do not impose the duty pointed to by the Plaintiffs in this case.  Under

the rationale of *Coleman*, therefore, the Plaintiffs have failed to establish a duty to disclose a

termination of the Plan, or LMR's financial status with regard to the Plan, to Plan members.

The Plaintiffs argue that this court should follow the admonition in *Coleman* to look

beyond the formal allocation of responsibilities and should determine that Great-West undertook

to provide notice to Plan members as a matter of fact, despite the language of the ASC.  The

Plaintiffs contend that the deposition testimony of Patricia Fry demonstrates that Great-West developed, modified, administered, and mailed healthcare notices to the Plaintiffs and their medical providers.  The Plaintiffs also point to notice letters sent by Great-West which stated that it was unable to take action on a claim for benefits because there were administrative or financial issues regarding the plan, and that Great-West was requesting an extension to make a determination.  Exhibit C to Doc. #103.  The letters sent to various Plaintiffs appear to be form letters and state that "delays are often resolved fairly quickly, usually within thirty days.  Once the matter is resolved, your claim will be processed and you will receive an explanation of benefits or a letter."  *Id.*  The Plaintiffs argue that because Great-West did undertake to provide notice to Plan members, this case is distinguishable from *Coleman*, and Great-West  had a fiduciary duty to provide notice of the termination of the Plan and LMR's failure to meet its financial obligations with respect to the Plan.

Great-West states that the notice letters and other correspondence sent by Great West were merely ministerial, claims-processing services within the meaning of the ASC, which do not transform Great-West into an ERISA fiduciary.

This court does not read *Coleman* to hold that if a party processes particular claims, and communicates with the individual plan member during that process, a broader duty to communicate with all plan members about the status of the plan is imposed on the party.  The *Coleman* court's statement of the facts of the case indicates that there were letters and notices sent by the insurance company to the plan beneficiary.  *Coleman*, 969 F.2d at 56-7.  Such notices did not provide a basis for a broader disclosure duty.  If the mere fact that notices about claimed benefits were sent established the broader duty, the *Coleman* court would not have had to

question whether the insurance company had a responsibility to "notify all plan beneficiaries of circumstances, such as the failure of a plan sponsor to pay policy premiums, that would affect the availability of benefits to all." *Id.* at 61.

A district court case outside of this circuit appears to address a similar sort of difference between of types of communication with plan members. *See P.I.A. Michigan City, Inc. v. National Porges Radiator Corp.*, 789 F. Supp. 1421 (N.D. Ill. 1992). In *P.I.A. Michigan City*, an employee had undergone treatment which was approved by the insurer of his employer's plan. The employer then failed to pay the premium, pulled out of the plan, and obtained different insurance. The new insurance did not cover the treatment. During the relevant time period, payments for the medical plan were being deducted from the employee's pay. The medical provider, as assignee of the employee, claimed that the initial insurer was a fiduciary and violated a fiduciary duty in failing to disclose the employer's actions. The court concluded that there was nothing to establish that the insurer had a fiduciary duty to send notice to employees when the employer failed to continue the policy. *Id.* at 1426. The court also noted, however, that the employee had made specific inquiries as to whether his treatment would be covered. The court concluded that as the administrator of claims under the plan, with discretion to grant or deny claims, the insurer did have a fiduciary duty which could have been implicated by the insurer incorrectly informing the employee that his treatment was covered under the plan. *Id.*

The notices Great-West undertook to provide in this case were contemplated by the ASC and the Plan as part of the claim processing procedure, and were not in response to inquiries about coverage by the Plan members. The Plan provides as follows:

> Claims for health benefits and services provided to a Member will be processed within 30 days of the date the claim is received by Great-West. If a claim

> decision cannot be made within the 30-day period, an extension of up to 15 days
> may be requested.  Before the end of the initial 30-day period, Great-West will
> send the Member written or electronic notice of the reason(s) for the delay.

Exhibit B to Doc. #102, page 24.

Great-West's providing of notice, therefore, was not undertaken outside of the terms of
the ASC, but was required by it.  Therefore, the mere fact that Great-West performed its duties in
communicating with Plan members about their claims does not render Great-West a fiduciary as
to noticing of events which affect the Plan generally.  To conclude to the contrary, that an extra
disclosure obligation exists, would be to require something outside of the ASC and Plan.  As the
*Coleman* court noted, the court cannot "blindside (Great-West) by implying the existence of
obligations when the only source of such obligations is judicial inventiveness."  *Id.* at 62.

It appears that the Plaintiffs have also attempted to advance a theory of duty to disclose
with respect to particular Plan members similar to that recognized in *P.I.A. Michigan City*.  The
Plaintiffs cite to *In re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 57 F.3d 1255,
1264 (3d Cir. 1995), for the proposition that an ERISA fiduciary must not misinform employees
through material misrepresentations and incomplete, inconsistent, or contradictory disclosures.
The Plaintiffs argue that the language of the notices sent by Great-West to Plan members when
action was delayed on claims for benefits was misleading because the letters stated that delays
are often resolved fairly quickly, but did not disclose that LMR was in arrears.

The court notes first that this evidence is to be distinguished from the evidence in *P.I.A.
Michigan City*, which did lead to a finding of a duty of disclosure, because these letters were not
in response to a specific inquiry about plan benefits, but appear to have been a form notice
generated when Great-West was unable to timely act on a Plan member's claim for payment of

14

benefits.  Even if this court were to assume that Great-West bore a fiduciary duty with respect to these letters, however, during the time period in which notices were sent, up until March of 2004, LMR could have paid what was due, and claims processing could have resumed as normal, so the failure to disclose LMR's financial status was not misleading.

One of the notice letters advising a Plan member that there were administrative or financial issues which had to be resolved was sent on March 23, 2004.  The Plaintiffs apparently intend to argue that this particular notice is distinguishable from the others, and is particularly misleading, because Great-West had already informed LMR on March 11, 2004 that the ASC would be terminated if LMR did not pay its outstanding balance in five days.  The Plaintiffs cite to Fry's deposition for the proposition that there was no reasonable expectation that the delay would be resolved within 30 days.  Fry Dep. page 100.

 Great-West points out that the Plaintiffs cannot establish that this Plan member was misled by this letter to her detriment, because every LMR employee was given a memorandum on March 24, 2004, s*ee* Exhibit K, stating that the contract with Great-West had been terminated. *See Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation*, 334 F.3d 365, 384 (3d Cir. 2003) (for a cause of action for breach of fiduciary duty for misrepresentation a plaintiff must show that plaintiff detrimentally relied on the misrepresentation).  Even if there was a fiduciary duty, the court cannot conclude that the evidence pointed to by the Plaintiffs establishes a claim for breach of fiduciary duty with its March 23, 2004 letter.

The Plaintiffs also point to medical pre-certifications provided for Plan members Annette Darby and Faye Tew.   As Great-West points out, the pre-certifications stated that the

certification is of medical necessity only and "does not guarantee payment of benefits under your policy." Exhibit H to Doc. #103. The pre-certifications also gave example as follows: "if your coverage is not in effect at the time of service, you may be fully responsible for all charges." *Id.*

In *Coleman*, the plaintiff advanced the argument that a fiduciary duty was breached because of a misrepresentation that she had coverage even though the employer was delinquent in premium payments. The court rejected this theory, noting that the notices sent stated that they did not guarantee payment, and that it was subject to verification of coverage. *Coleman*, 969 F.2d at 60. Accordingly, in this case where the medical pre-certifications contained similar disclosures, this court cannot conclude that the pre-certifications in this case establish a breach of any alleged fiduciary duty to particular Plan members.

Finally, Great-West moves for summary judgment on the Plaintiffs' claim that it breached a duty as a co-fiduciary by participating knowingly in the acts of the other fiduciary or administrator. Great-West argues that there is no evidence that it knew of LMR's failure to inform plan participants about the state of the Plan. The court agrees that even if there were sufficient evidence that Great-West was a fiduciary, the Plaintiffs have failed to provide sufficient evidence of knowledge on the part of Great-West to create a question of fact as to this theory.

Summary judgment is due to be GRANTED to Great-West on all of the Plaintiffs' fiduciary duty claims against Great-West, and DENIED to the Plaintiffs.

### V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  Plaintiffs' Motion for Partial Summary Judgment (Doc. #101) is DENIED.

2.   Defendant Great-West Health Care, Inc. and Great-West Life & Annuity Insurance Company's Motion for Summary Judgment (Doc. #100) is GRANTED and Judgment is entered in favor of Defendant Great-West Health Care, Inc. and Great-West Life & Annuity Insurance Company and against the Plaintiffs.

3.   The request contained in the Plaintiffs' Fourth Amended Complaint for an advisory jury is DENIED.

The case will proceed to trial before the court on the Plaintiffs' claims against the remaining Defendant, LMR International, Inc.[5]

Done this 24th  day of May, 2007.

 /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The case has been stayed as to Custom Services International, Inc.

17